Wendel EVANS and Murial Evans, et al., Appellants,

v.

JOLEEMO, INC., Bobby L. Morris, Individually and d/b/a Bandy's, Appellees.

No. 13-85-469-CV.

Court of Appeals of Texas, Corpus Christi.

June 30, 1986.

Rehearing Denied Aug. 29, 1986.

Russell H. McMains, Edwards, McMains & Constant, Corpus Christi, for appellants.

Jeanie Coltrin, Tom Hermansen, Hunt, Hermansen, McKibben & Barger, Corpus Christi, for appellees.

## OPINION

SEERDEN, Justice.

Appellants brought wrongful death and survival actions against appellees and Henry Scott Smith. They alleged that appellees negligently served alcoholic beverages to Smith after he became intoxicated in their bar, and that Smith then negligently drove his car, colliding with appellants' son's motorcycle and causing the son's death.

Appellees specially excepted to certain paragraphs in the petition, and the trial court severed the cause of action against appellees and dismissed it. Appellants raise three points of error on appeal, contending that their petition stated a cause of action against the bar owners, and that the court erred in dismissing it. We agree and reverse and remand.

Appellants pled that by negligently serving the intoxicating liquor to Smith, appellees violated a duty they owed to Smith and to the deceased, and that appellees' violation of the duty was a proximate cause of the death and resultant damages.

By their petition, appellants offered to show not only that appellees served alcoholic drinks to Smith when he was intoxicated, but that appellees and their agents knew or should have known that Smith was intoxicated when they served him, and that they knew or should have known that he was going to leave the premises by driving his car. The petition further alleged that appellees were negligent in failing to provide taxi or limousine service for its patrons who became intoxicated and in failing to advise police that the intoxicated person was leaving the premises when they knew, or in the exercise of reasonable care should have known, he would attempt to drive on the public streets while intoxicated. For purposes of this appeal, these allegations are taken as proven. *Fazekas v. University of Houston*, 565 S.W.2d 299 (Tex.Civ. App.—Houston [1st Dist.] 1978, writ ref'd n.r.e.).

Appellants do not seek to establish liability simply because Smith obtained the intoxicant from appellees. Rather, they have alleged a violation of a duty, foreseeability, proximate cause, and damages.

A dramshop is "a drinking establishment where liquors are sold to be drunk on the premises; a bar or saloon." BLACK'S LAW DICTIONARY (Fifth Edition 1979). The fact that Texas has not enacted so-called dramshop legislation does not mean that persons operating such establishments are immune from well-accepted and long-standing principles of common law. Such legislation would clarify and codify the law on liability of operators of dramshops; however, lack of such legislation simply requires the courts to deal with the subject in their traditional fashion through case-by-case decision and analysis.

■ The common-law general rule is that it is not a tort to sell liquor to an ordinary, able-bodied person. The stated rule that the drinking of the liquor, not the furnishing of it, is the vice, presupposes sale of the alcohol to a normal, able-bodied person. The reasoning does not apply when the person selling the intoxicant knows the purchaser is intoxicated and therefore impaired in his ability to conform to ordinary rational conduct.

The ancient case of *McCue v. Klein*, 60 Tex. 168 (1883) illustrates this principle. In that case, the defendants induced a habitual drunkard to drink three pints of whiskey, thereby causing his death. Stating the general principle that a man can recover no damages for an injury, received at the hands of another, to which he has consented, the court went on to reason that when the injured party was divested of the power to refuse by total or partial want of mental facilities, liability could not be excused on the ground of consent. The maxim of "volenti non fit injuria" presupposes that the party is capable of giving assent to his own injury. The court concludes at 169:

And so if one whose mental faculties are suspended by intoxication so induced to swallow spirituous liquors to such excess as to endanger his life, the persons taking advantage of his condition of helplessness and mental darkness and imposing the draught upon him must answer in damages for the injury that ensues.

While *Otis Engineering Corp. v. Clark*, 668 S.W.2d 307 (Tex.1983), involves the employer-employee relationship, the rationale at 311 applies here. The court states that when an employer exercises control over an incapacitated employee, it has the duty to take reasonable and prudent actions to prevent the causing of unreasonable risk or harm to others. This would apply even more forcefully in this case, where appellees are alleged to have encouraged and participated in the incapacitating of Smith in the first place.

■ We hold under general common law principles that a tavern owner who encourages one to consume too much alcohol, continues to serve him alcohol after he knows or should know he was intoxicated, and who knows or should know that he will operate a motor vehicle on the public streets, owes a duty to third persons to take such precautions as are reasonable and prudent to prevent the intoxicated person from driving, and that it is foreseeable that a breach of this duty could cause injury to third persons. *See Poole v. El Chico Corp.*, 713 S.W.2d 955 (Tex.App.— Houston [14th Dist.], 1986).

■ Appellants further contend that TEX.ALCO.BEV.CODE ANN. § 101.63(a) (Vernon 1978), which provides that it is a criminal offense to knowingly sell alcoholic beverages to a habitual drunkard or an intoxicated or insane person, establishes such to be negligence per se. Appellees argue that this section is only for the protection of habitual drunkards, intoxicated or insane persons, and does not establish a duty of care or standard of conduct. The same contention was made and rejected in *Poole*. In that case, the court observed that the Alcoholic Beverage Code provides: "This code is an exercise of the police power of the state for the protection of the

welfare, health, peace, temperance, and safety of the people of the state." Common sense and human experience compels the knowledge that intoxicated persons are a serious threat to other persons and others' property. While it is not necessary to decide if the statute establishes negligence per se, we believe that the legislature, in adopting TEX.ALCO.BEV.CODE ANN. § 101.63(a), intended to protect the public as well as intoxicated persons. The legislature indicated its concern for the public in its recent re-enactment of TEX.PENAL CODE ANN. § 42.08(a) (Vernon Supp. 1986): "An individual commits an offense if the individual appears in a public place under the influence of alcohol or any other substance, to the degree that the individual may endanger himself *or another*." (Emphasis added.)

We sustain appellants' points of error, reverse the judgment of the trial court, and remand the case for a trial on the merits.

UTTER, BENAVIDES and DORSEY, JJ., join.

NYE, C.J., and KENNEDY, J., dissent.

NYE, Chief Justice, dissenting.

I respectfully dissent. The majority has implicitly and with a totally incomplete analysis overturned one hundred and fifty years of common law. This attempt by the majority to usurp the power of the legislature is improper and incorrect. The function of the intermediate court of appeals is primarily a stare decisis court. Inventiveness belongs to the legislature and, in some cases, the Supreme Court and Court of Criminal Appeals, but not to the intermediate appellate courts.

Initially, the majority has chosen to pluck from thin air a cause of action by third parties who are injured by the acts of intoxicated patrons against bar owners. The majority, while recognizing that Texas has no statutory dramshop liability, without explanation places a common law duty on tavern owners under supposedly "traditional" rules of common law negligence. This is not the case here.

Ordinarily, a plaintiff may maintain an action in negligence if he proves:

1. A duty, or obligation, *recognized by the law,* requiring the [defendant] to conform to a certain standard of conduct, for the protection of others against unreasonable risk.

2. A failure on [defendant's] part to conform to the standard required ...

3. A reasonable close causal connection between the conduct and the resulting injury.... [foreseeability, and]

4. Actual loss or damage.... [Emphasis added.]

W. Prosser, *Handbook of the Law of Torts* § 30 at 143 (4th Ed.1971).

As set forth in the majority's opinion, "negligence" is an abstract concept which must be defined for a jury as consisting of certain elements. As previously set forth herein, foremost among those elements there must be a "duty recognized by law." Without the existence of the "duty recognized by law" the remaining elements are irrelevant and cannot be by themselves the basis of a cause of action in negligence.

The majority, while recognizing the common law general rule that it was not a tort to sell liquor to an ordinary, able-bodied person, does not state the complete common law rule. At common law, a tavern owner is not liable for injuries sustained off-premises by third persons as a result of the acts of an intoxicated patron, even when the tavern owner's negligence in serving that patron was a contributing cause of the accident. *See Vesely v. Sager,* 5 Cal.3d 153, 95 Cal.Rptr. 623, 627, 486 P.2d 151, 155 (Cal.1971), for a compilation of case citations and an explanation of the rationale supporting the common law rule. *See also* Annot., 98 A.L.R.3d 123 (1984); Annot., 97 A.L.R.3rd 528 (1984); 48A C.J.S. *Intoxicating Liquor* § 428 (1981); 45 AM. JUR.2nd, *Intoxicating Liquor* § 553 (1969).

We are not unmindful and do, in fact, take judicial notice of the terrible toll taken both in personal injuries and property damage by drivers who mix alcohol and gas-

oline. However, those societal issues are not questions before this Court, but are questions that should be addressed by the legislature.

In Texas, the common law rule concerning dramshop liability was not a rule of immunity. Indeed, it is impossible to imagine why, of all occupations, those who furnish liquor would be singled out for a judicially conferred blessing of immunity to respond in damages for their wrongful acts. The common law rule in Texas is one of *non-liability,* founded upon concepts of causation and foreseeability. I would acknowledge the logical syllogism that one cannot become intoxicated by drinking liquor unless someone furnishes it. However, the converse is equally logical: one cannot become intoxicated if one does not drink. Common sense dictates that both the furnishing and the drinking are part of the chain of cause and effect that produces accidents such as the one in this case.

In my judgment an opinion of this Court should serve certain functions. Our decision should be clearly stated together with sufficient facts so as to enable the decision to be used as controlling precedent in similar future cases. Assuming that the case is of any significance, the opinion should state the rationale upon which the decision was reached in order to demonstrate that it was reached on more than instinct or result orientation. Hopefully, there would thus be engendered respect and acceptance of the "law" announced by the opinion in the institution which so announced the "law."

With all due respect to the majority, I believe today's opinion suffers from several defects. First, it acts retrospectively without the defendant having any chance to protect itself by action or insurance. Second, it provides no rationale or reasoning process. The majority's opinion provides only a superficial gloss to the very large question of whether the courts of this state should judicially legislate in an area in which the great majority of jurisdictions have acted only through their legislature.

The majority fails to even pay lip service to the established rule of decision to be followed by our courts which originated with the inception of statehood and continues to remain codified as TEX.REV.CIV.STAT. ANN. art. 1 (Vernon 1969) now recodified in TEX.CIV.PRAC. & REM.CODE ANN. § 5.001 (Vernon 1986).

Article 1 requires the courts of Texas to apply the common law of England as the rule of decision in all cases where not inconsistent with legislatively enacted statutes. Such adherence to article 1 would, of course, require a result in this case contrary to that of the majority's. Liability of tavern owners did *not* exist at common law.

Whether one agrees or disagrees with the policy considerations relied on by the majority in casting aside the common law rule of non-liability, the simple fact remains that, as a general proposition, courts may not authorize actions unknown to the common law in the absence of a legislative enactment or policy to the contrary. This principle of judicial restraint is statutorily and judicially recognized in Texas. *See* TEX.REV.CIV.STAT.ANN. art. 1 (Vernon 1969) codified in TEX.CIV.REM.CODE ANN. Section 5.001 (Vernon 1986); *Great Southern Life Insurance Co. v. City of Austin,* 112 Tex. 1, 243 S.W. 778 (1922).

As the majority has noted, there is not now in existence in Texas a legislatively created dramshop liability. What the majority has failed to apprise the bench and bar of this state is the fact that such liability did in fact exist at one time in Texas but was repealed.[1] It has been reintroduced to our legislature at least three times in the last decade and has not been enacted into law. Thus, while the majority of other states have created dramshop liability by legislation, Texas has chosen not to do so. Nor could it be argued that the legislature has not had the opportunity, based on the fact that such legislation has been introduced in the immediate past. If the Supreme Court chooses to create such liabili-

---

1. Art. 3380, 5060g, R.S. 1895. Art. 7452, Vernon's Ann.Civ.Stat.1914. Art. 7452 superseded the prior articles, and it was omitted from the 1925 revision.

ty, it should, as it has many times in the past, advise the legislature of its intention, so that the public can be properly made aware of the future consequences.

This leads me to the question, since the legislature has not acted to created dramshop liability, of whether this Court should judicially legislate. The answer to this question should be no. The public generally criticizes the courts for legislation when there is no pressing need to do so. In my judgment, the majority opinion fails to even address the question of whether this Court should create a new cause of action where the legislature has refused to do so. It merely notes that some general common law form of negligence is appropriate in dramshop liability cases. We are favored with no discussion of what reasoning serves as a basis of this conclusion.

One might argue at this juncture that this Court, within its authority to not only state but enlarge the common law, may take the step urged by the majority today. The question remains—should it, and if so, why? We are not asked to judicially overrule judicially created immunities or exemptions—we are asked to create an entirely new cause of action, presumably based on a new philosophy. The majority here offers no explanation as to "why."

Until now the courts of this State, in following the common law of England, have refused to find such liability. (We are cognizant of the opinion in *Poole v. El Chico Corp.*, 713 S.W.2d 955 (Tex.Civ. App.—Houston [14th Dist.], 1986), cited by the majority. However, since the time for filing a motion for rehearing has not even passed in the Houston case, we are not compelled to follow a panel decision by another court of appeals which has not even remotely approached the necessary finality to establish common law precedent.)

The majority's opinion requires a multitude of decisions by trial courts without providing any guidance. Do we apply a different standard of care to only those in the business of dispensing intoxicants and, if so, within that generalization, where do

we begin and where do we stop? Is such liability to be imposed upon the U.S. Government, which monopolizes the sale of alcoholic beverages at military establishments? Is the liability to extend to retail off-premises consumption or in wholesales to other businesses for on-premises consumption? Is such liability to be extended to a vendor of beer and wine, including the supermarket, the convenience store, the ma and pa neighborhood store, the automobile race way, the baseball park, the golf course, the county fair grounds, the fraternal or service club picnic, and innumerable other businesses and organizations which may incidentally engage in the vending of beer and wine under various circumstances? What distinctions, if any, are to be drawn between different "purveyors?" Is this new liability to be applied only to "vendors?" What of the social host who furnishes or gives intoxicants to his social guests? The problem is far from illusory. *See Carr v. Turner*, 238 Ark. 889, 385 S.W.2d 656 (1965); *Dwan v. Dixon*, 216 Cal.App.2d 460, 30 Cal.Rptr. 749 (1963).

It serves no purpose and is of no assistance to the bench and bar for the majority to state that negligence and proximate cause are questions for the jury, nor is it of any assistance to state general rules regarding a duty to use care to avoid injury when such can be "reasonably anticipated or foreseen." A jury does not arrive at a verdict in a vacuum, but rather as a result of and in conformance with the instructions of the trial court. In the instant case, is the jury to be left to its own speculation under the over-generalized language of the majority?

What is the duty of the defendant here toward plaintiffs and how should a trial court define that duty in its instruction to the jury? Must a purveyor inquire about the sobriety of entering patrons? Should a purveyor inquire of a patron his mode of transportation and if the patron intends the crime of driving while intoxicated upon departure? If a purveyor does so inquire and receives satisfactory answers, has his duty been discharged? Must the purveyor

count and record the number of drinks served each patron? If a patron has four drinks (assuming such would produce a blood alcohol content beyond the presumptive level) should or must a purveyor use persuasion or even physical force to prevent the patron from entering a motor vehicle? If the purveyor so fails in his persuasiveness, is that nevertheless a discharge of his duty or is it an admission that he served the patron too many drinks? Would it be sufficient if all alcoholic beverages, as in tobacco sales, are served in containers where there is imprinted "driving after drinking may be hazardous to the health of others"? Perhaps most importantly, must any business purveyor *reasonably foresee and anticipate* that a customer will commit a crime because of or with the comodity sold, furnished, prescribed, or delivered to the customer?

The above questions may appear facetious, but it must be repeated that the trial courts must, in its jury instructions, be able to define the "duty recognized by law." Further, and in the future, this Court must consider how, if at all, the "duty" will vary as between a purveyor/owner of a tavern, bar or restaurant as contrasted with a business dealing in liquor, beer or wine for off-premises consumption, such as a grocery store, a government liquor dispensery, or some other type of vendor.

Within the generalization of vendors of intoxicants, is it only the combination of drinking and driving which is to result in exposure to liability? Is it only the negligent as contrasted with intentional torts which may result in liability? While liquor may incapacitate or release inhibitions in some, it is well known for brutalizing others. Should a vendor be required to determine which category a patron may fall within so that he may be protected against an action brought by an assaulted wife, child, or police officer who contends that it was the vending of the intoxicants that led to the assault and the resulting damage to the plaintiff?

The majority tells us that the policy decision is made to the response of the problem

of the drunken driver. We are told that a vendor will expose himself to liability if he serves when already intoxicated who he may reasonably expect will thereafter drive a motor vehicle, or if he serves a completely sober person to the point where he becomes intoxicated, if he may reasonably believe that the person may thereafter drive a motor vehicle. Such is, of course, only one prong of the problem. What of the vendor of automobiles who sells a vehicle to a person who habitually drinks or occasionally drives while drunk? Do we impose like liability on the vendor of motor vehicles?

Saloon keepers and bar keepers may be largely unloved and considered fair legal game. Perhaps into that same category ought to be placed groceries, restaurateurs, and others, who in any way, however small, deal in intoxicants of any quantity.

It must be remembered that what is done today reaches far beyond this one class of business. Who placed that instrumentality in the hands, mouth, or control of another person, and whether such placement by a vendor can be causative factor, are questions of enormous import to the law of the State of Texas. The reach and sweep of such new doctrine and philosophy can be enormous. Almost any business which sells any type of good and many of the professions, by a logical extension of the majority's doctrine, may now be subject to liability. These complex problems are best left for the legislature to address and the courts to interpret in the classic function of our form of government. The legislature has tightened the criminal driving while intoxicated laws and may and should tighten the civil liability in the future. But, in doing so, the public should be forewarned of the impending consequences.

Until the legislature acts, this Court should not presume to take it upon itself, as the majority of the Court has done today, to abrogate the common law by making wide-sweeping policy decisions, which, in my belief, should be reserved to our legislature. This conclusion is not without recent authority. In *Holmes v. Circo*, 196

Neb. 496, 244 N.W.2d 65 (1976), the Nebraska Court made the following astute observation with which I agree:

We are mindful of the misery caused by drunken drivers and the losses sustained by both individuals and society at the hands of drunken drivers, but the task of limiting and defining a new cause of action which could grow from a fact nucleus formed from any combination of numerous permutations of the fact situation before us is properly within the realm of the legislature.

The imposition of a common-law duty of due care would create a situation rife with uncertainty and difficulty. If a commercial vendor is liable for negligence, does the host at a social gathering owe a duty to prospective victims of guests? The difficulties of recognizing intoxication and predicting conduct of an intoxicated patron without imposing some duty of inquiry are evident. Problems could also arise in the apportionment or sorting out of liability among the owners of various bars visited on 'bar hopping' excursions. The correct standard of care to be used also presents a problem, as does the determination of whether all acts of the patron, including intentional torts, should be included within the liability of the tavern owner or operator.

Finally, I would again argue that any such common law adventure should at least be done prospectively and not retrospectively. As previously set forth herein, purveyors of alcohol in whatever form have justifiably relied on one hundred and fifty years of common law principles in not seeking to protect themselves from this form of liability. To suddenly and retrospectively apply this doctrine to the unprepared will only create an additional, judicially-created inequity. *See Chevron Oil Co. v. Huson,* 404 U.S. 97, 92 S.Ct. 349, 30 L.Ed.2d 296 (1971). If such liability is to be in existence in Texas, at least allow all of those who are currently purveyors of alcoholic beverages make the choice as to whether or not they desire to continue with their current practices and occupations.

For the reasons herein set forth, I would AFFIRM the judgment of the trial court.

KENNEDY, J., joins in this dissent.