Jesus GARZA and Maria Elena Garza, Individually and as Personal Representatives of the Estate of Rolando Garza, Deceased, Appellants,

v.

The STATE of Texas, Appellee.

No. 13–92–069–CV.

Court of Appeals of Texas, Corpus Christi.

June 16, 1994.

Virgil W. Yanta, David McQuade Leibowitz, Leibowitz and Yanta, San Antonio, for appellants.

Hector J. Flores, Asst. Atty. Gen., Highway Div., Dan Morales, Atty. Gen., Will Pryor, First Asst. Atty. Gen., Mary F. Keller, Deputy Asst. Atty. Gen., Richard D. Naylor, Chief, Highway Div., Atty. Gen's. Office, Austin, for appellee.

## OPINION

GILBERTO HINOJOSA, Justice.

Appellants, Jesus and Mary Elena Garza, appeal from the trial court's granting of a summary judgment on the pleadings in favor of appellee, the State of Texas.[1] The State based its summary judgment motion on the doctrine of sovereign immunity. By a single point of error, appellants contend that the trial court erred in granting summary judgment. We affirm in part and reverse and remand in part.

The Garzas brought an action against the State and other defendants as a result of the death of their son, Rolando Garza, in an automobile/pedestrian accident. A car struck and killed Rolando while he was waiting to cross Highway 83 in Hidalgo County, Texas to attend Alamo Junior High School. While Rolando stood on the shoulder on the north side of Highway 83 and waited for the traffic to clear, a motorist, traveling west on Highway 83, passed another westbound vehicle. Upon returning to her lane of travel, the first motorist lost control of her car and struck and killed Rolando.

The accident occurred near the school. The school, built in 1986, is situated south of Highway 83 and adjacent to it. The Garzas alleged that no signs were posted in the vicinity of the school designating the area a school zone and setting a reasonable speed limit during school hours. The speed limit set for this stretch of highway was 45 mph. Appellants further alleged that the State knew about the absence of these signs but failed to take corrective action within a reasonable time.

Appellants claimed the State committed six negligent acts and omissions: (1) failure to initially place road signs designating the area a school zone; (2) failure to initially place road signs in the vicinity of the school setting a reasonable speed limit during school hours; (3) failure to correct the absence, condition or malfunction of road signs within a reasonable time after notice was given; (4) failure to hold a public hearing to consider the speed limit in the school zone; (5) failure to notify certain parties of the need for signs designating the area as a school zone; and (6) failure to notify certain parties of the need for signs setting a reasonable speed limit during school hours.

The State moved for summary judgment based upon the pleadings on file which the State asserted show as a matter of law that there is no genuine issue as to any material fact. The State based its motion on the doctrine of sovereign immunity and claimed that such immunity was not waived by specific terms of the Tort Claims Act. The Garzas responded that the Tort Claims Act did indeed waive immunity. Neither side offered evidence in support of or in opposition to the State's motion. The trial court granted the State's motion for summary judgment. By a single point of error, appellants contend that the trial court erred in granting summary judgment.

Summary judgment should not be based on a pleading deficiency such as whether a cause of action has been sufficiently pled. *Massey v. Armco Steel Co.*, 652 S.W.2d 932, 934 (Tex.1983); *Texas Dep't of Corrections v. Herring*, 513 S.W.2d 6, 10 (Tex.1974). A plaintiff should be allowed to amend an insufficient pleading to cure the defect. *Herring*, 513 S.W.2d at 10. Special exceptions are used to challenge the sufficiency of a pleading. TEX.R.CIV.P. 91. Amendment is a matter of right under special exception practices. *Estate of Bourland*

1. The Garzas originally filed suit against a number of defendants, including the State of Texas. After summary judgment was granted in favor of the State, the trial court severed the claims against the State resulting in a final judgment.

*v. Hanes,* 526 S.W.2d 156, 159 (Tex.Civ.App.–Corpus Christi 1975, writ ref'd n.r.e.). The right to replead should not be circumvented by a motion for summary judgment on the pleadings. *Herring,* 513 S.W.2d at 10. However, summary judgment is proper if, given the opportunity to amend, no amendment is made or a further defective pleading is filed. *Herring,* 513 S.W.2d at 10; *Russell v. Dep't of Human Resources,* 746 S.W.2d 510, 512–13 (Tex.App.–Texarkana 1988, writ denied). Summary judgment is also proper if a pleading deficiency is of the type that could not be cured by an amendment. *Swilley v. Hughes,* 488 S.W.2d 64, 67 (Tex.1972). Pleadings may form the basis for a summary judgment when the plaintiff states no cause of action or legal claim. *Cathey v. First City Bank of Aransas Pass,* 758 S.W.2d 818, 821 (Tex.App.–Corpus Christi 1988, writ denied).

When a motion for summary judgment is directed solely at the plaintiff's petition, we must accept as true every allegation against which summary judgment is sought. *Evans v. Joleemo, Inc.,* 714 S.W.2d 394, 395 (Tex.App.–Corpus Christi 1986), *aff'd sub nom. El Chico v. Poole,* 732 S.W.2d 306 (Tex.1987); *Abbott v. City of Kaufman,* 717 S.W.2d 927, 929 (Tex.App.–Tyler 1986, writ dism'd w.o.j.). Every reasonable inference will be indulged in favor of the non-movant and any doubts resolved in its favor. *Nixon v. Mr. Property Management Co.,* 690 S.W.2d 546, 548–49 (Tex.1985); *Johnston v. Del Mar Distrib. Co.,* 776 S.W.2d 768, 769 (Tex.App.–Corpus Christi 1989, writ denied). Additionally, in order to dispose of the entire case, the defendant's motion must identify or address each of plaintiff's causes of action and their elements. *Black v. Victoria Lloyds Ins. Co.,* 797 S.W.2d 20, 27 (Tex.1990); *Harris v. Varo, Inc.,* 814 S.W.2d 520, 526 (Tex.App.–Dallas 1991, no writ).

Before the State can be sued, it must first waive its sovereign immunity. *Duhart*

*v. State,* 610 S.W.2d 740, 741 (Tex.1980); *Hosner v. DeYoung,* 1 Tex. 764, 769 (1847). The Texas Tort Claims Act [2] provides a limited waiver of sovereign immunity for certain acts; however, § 101.056 states that the State retains its sovereign immunity for any discretionary decisions made by a governmental unit. The Act specifically addresses and differentiates between liability for initial sign placement, TEX.CIV.PRAC. & REM.CODE ANN. § 101.060(a)(1) (Vernon 1986), and the correction of existing signs, TEX.CIV.PRAC. & REM.CODE ANN. § 101.060(a)(2) (Vernon 1986).

Appellants first argue that the decision to initially place traffic control signs at the accident site is not necessarily discretionary and § 101.060(a)(1) does not automatically preclude liability. They contend that article 6701d of the Uniform Act Regulating Traffic on Highways requires the State to take affirmative action in some circumstances and that the original placement of signs may be mandatory in other circumstances. According to the State, art. 6701d, § 30(a) grants the State discretion by providing:

> The State Highway Department *may* place and maintain ... such traffic control devices, conforming to its manual and specifications, upon all state highways *as it may deem necessary,* to indicate and carry out the provisions of this Act or to regulate, warn, or guide traffic.

TEX.REV.CIV.STAT.ANN. art. 6701d, § 30(a) (Vernon 1977) (emphasis added).

The same department is mandated to adopt a manual and specifications for a uniform system of traffic control devices consistent with the provisions of the Act. TEX.REV.CIV.STAT.ANN. art. 6701d, § 29 (Vernon 1977).[3] Whether the action is mandatory or discretionary requires interpretation of the statute and is a question of law [4] appropriate

---

2. TEX.CIV.PRAC. & REM.CODE ch. 101 (Vernon 1986).

3. That manual was not before the trial court and is not before us.

4. *See State v. Terrell,* 588 S.W.2d 784, 787–89 (Tex.1979) (interpreting Tort Claims Act to determine whether actions of police officer giving chase to a speeding car invoked sovereign immu-

nity); *McKinney v. City of Gainesville,* 814 S.W.2d 862, 867 (Tex.App.–Fort Worth 1991, no writ). We decline to follow the holding of *Villarreal v. City of San Antonio,* 657 S.W.2d 175, 177 (Tex.App.–San Antonio 1983, no writ) (holding that whether an act is discretionary is a fact question and not appropriate for summary judgment determination).

for summary judgment resolution. *See State v. Hynes,* 865 S.W.2d 943, 944 (Tex.1993) (per curiam) (affirming summary judgment in favor of the State based on the court's determination that an action was discretionary).

The phraseology of art. 6701d, § 30(a) is in language that historically reflects action that is permissive and discretionary rather than mandatory. The supreme court has held: "The provisions of the [Texas Manual on Uniform Traffic Control Devices] indicate that it is not mandatory in the legal sense used by the court of appeals." *State Dep't of Highways & Pub. Transp. v. King,* 808 S.W.2d 465, 466 (Tex.1991) (per curiam). There was no pleading or evidence before the court to indicate that sign placement in these circumstances is anything other than discretionary. Summary judgment as to a § 101.-060(a)(1) claim was proper.

■ The Garzas next contend that the State acted negligently in failing to correct the absence, condition, or malfunction of traffic or road signs in the vicinity of the school within a reasonable time after receiving notice. Tex.Civ.Prac. & Rem.Code § 101.-060(a)(2). Appellants argue that they initially pled that there were no signs posted setting a reasonable speed limit. Therefore, from this statement, one may reasonably infer that existing signs, regulating the speed limit, set an unreasonable speed limit. Hence, the State should have remedied this problem by placing signs near the school that state a lower speed limit.

However, in its motion for summary judgment and in its brief addressing this claim, the State, while acknowledging that subsection (a)(2) applies only after the sign has been initially in place, merely states that such is not the case in this cause of action. In its motion for summary judgment, the State failed to present any arguments to refute the applicability of § 101.060(a)(2).

■ Finding every reasonable inference in favor of the non-movant, we find that this claim falls within the purview of § 101.-060(a)(2) regarding signs already in place. *City of San Antonio v. Schneider,* 787 S.W.2d 459, 468 (Tex.App.–San Antonio 1990,

writ denied) (§ 101.060(a)(2) pertains to a sign that was in place at one time). Under § 101.060(a)(2), sovereign immunity is waived if the governmental unit received notice but failed to correct the absence, condition or malfunction of a road sign within a reasonable time. The Garzas do not allege that the existing signs were removed or malfunctioned. Thus, the issue is whether the signs present a "condition" that should have been corrected. The two cases most favorable to the Garzas are *Sparkman v. Maxwell,* 519 S.W.2d 852 (Tex.1975) and *City of San Antonio v. Schneider,* 787 S.W.2d 459 (Tex.App.–San Antonio 1990, writ denied).

*Sparkman* involved a condition of an existing traffic signal. The supreme court held that the city was liable for installing a traffic signal which showed a red left arrow to indicate that motorists should stop. 519 S.W.2d at 857–58. However, the signal confused the public and misled them into believing that they could turn left. The Court defined "condition" as an intentional or inadvertent state of being and applied the definition to a traffic light that operated as intended but endangered the public. *Id.* The court in *Schneider* stated that condition "pertains to a sign or warning device that was in place at one time but was subsequently removed, is malfunctioning or is *endowed with some condition that should be corrected by the governmental unit.*" 787 S.W.2d at 468 (emphasis added).

This language is rather broad and we can likewise reason that the speed limit sign operated as intended but actually endangered the public or was "endowed with some condition that should be corrected by the governmental unit." Under normal circumstances, a 45 mph speed limit sign functions properly and as intended by the State. However, under the existing special circumstances created by the recent construction of Alamo Junior High School, the 45 mph sign may mislead the public into believing that it is reasonable and safe to drive at this speed when in actuality it is an excessive speed for this area. Knowing this, the 45 mph speed limit sign near a school zone was a condition that should have been corrected by the State.

At this stage of the lawsuit, where only the pleadings were filed, we find that it is premature to dismiss this particular claim. On the face of the pleadings, the Garzas have sufficiently stated a cause of action under § 101.-060(a)(2). The State, which has the burden of proof, failed to adequately demonstrate that § 101.060(a)(2) is inapplicable as a matter of law. Therefore, granting of summary judgment on this ground was error.

▬▬▬ Lastly, appellants generally urge that the State be held liable for failing to act to make the stretch of Highway 83 adjacent to Alamo Junior High School safer for the children who attended school there. The Garzas' other claimed omissions by the State include: failure to maintain the highway, failure to hold a public hearing, and failure to notify other unspecified parties of the need for changed signage in the school area. Maintenance of a highway does not include a redesign but involves preserving existing conditions to prevent deterioration. *Shives v. State,* 743 S.W.2d 714, 716 (Tex.App.–El Paso 1987, writ denied). The failure to hold a public hearing could not have caused the death of Rolando Garza because the statute providing for the hearing does not require the State to take any action after the hearing. Tex.Rev.Civ.Stat.Ann. art. 6701d, § 167(d) (Vernon Supp.1993). There was no authority cited for appellants' allegation that the State should have notified some other party. Because the act is not mandatory, it is discretionary and the State is exempt from liability for discretionary acts. Tex.Civ.Prac. & Rem.Code Ann. § 101.056 (Vernon 1986). Summary judgment as to these claims was proper.

Appellants' sole point of error is sustained as to their claim under § 101.060(a)(2) and overruled as to their remaining claims.

We reverse and remand the cause of action based on § 101.060(a)(2) to the trial court and affirm the trial court's judgment as to the remaining causes of action.

Dissenting Opinion by Justice DORSEY, joined by Justice KENNEDY.

DORSEY, Justice, dissenting.

Appellant is complaining of the failure of the State to reduce the speed limit on Highway 83 near a school. The State's immunity from suit bars appellant's action unless the State has agreed to be sued by waiving immunity under the Tort Claims Act.[1] The majority finds such a waiver by stretching the language of a section, together with its interpretive cases, and disregarding another section in which the State has unequivocally retained its immunity from suit. Accordingly, I dissent.

A general overview of the Tort Claims Act is instructive. Title 5 of the Civil Practice and Remedies Code is entitled "Governmental Liability" and it begins with Chapter 101, "Tort Claims." Subchapter A concerns general provisions, such as the short title and definitions. Subchapter B, "Tort Liability of Governmental Units," states the rules of governmental liability and the waiver of sovereign immunity, and begins with § 101.021. Subchapter C addresses "Exclusions and Exceptions."

Section 101.021 states, "A governmental unit in this state is liable for: (1) property damage, personal injury and death" that results for the negligence of an employee using a motor driven vehicle or equipment, and "(2) for personal injury and death caused by a condition or use of tangible personal or real property...." Section 101.025 waives governmental immunity "to the extent of liability created by this chapter." Unless the State has accepted the potential liability under a provision of § 101.021, it is immune from suit.

Applying those provisions to the facts of the present action, the only claim against the state is one caused by a condition or use of tangible personal or real property. Included in the term "use" of tangible personal property is the misuse or non-use of that type of property. *Robinson v. Central Texas MHMR Center,* 780 S.W.2d 169, 171 (Tex. 1989). A road sign stating the speed limit is tangible personal property.

However, contained within Subchapter C, "Exclusions and Exceptions," is found section

---

1. Tex.Civ.Prac. & Rem.Code ch. 101 (Vernon 1986).

101.060, "Traffic and Road Control Devices," which provides:

(a) This chapter [accepting potential liability and waiving immunity from suit] does *not* apply to a claim arising from:

(1) *the failure* of a governmental unit *initially to place a traffic or road sign*, signal, or warning device if the failure is a result of discretionary action of the governmental unit; .... (Emphasis Added)

By this language the legislature expressly declined to waive immunity for the non-use of certain tangible personal property: the initial placement of traffic or road signs when it is a discretionary action.

The majority attempts to avoid the clear exclusionary provision of § 101.060(a)(1) quoted above by relying on the next paragraph, (a)(2), which provides:

(a) This chapter does not apply to a claim arising from:

(2) the absence, condition, or malfunction of a traffic or road sign, signal, or warning device unless the absence, condition, or malfunction is not corrected by the responsible governmental unit within a reasonable time after notice; ...

The majority says,

Under normal circumstances, a 45 mph speed limit sign functions properly and as intended by the State. However, under the existing special circumstances created by the recent construction of Alamo Junior High School, the 45 mph sign may mislead the public into believing that it is reasonable and safe to drive at this speed when in actuality it is an excessive speed for this area.

Opinion at p. 675.

For this conclusion the majority relies principally on *Sparkman v. Maxwell*, 519 S.W.2d 852 (Tex.1975). *Sparkman* involved a collision that occurred after the city altered a traffic light commanding a left turn lane. The City of Wichita Falls modified a standard three light (red, yellow and green) traf

fic signal by placing a template over all three lights with a left turn arrow cut into the template. The result was that motorists attempting to turn left saw—when the light was red—a red arrow pointing to the left. Mrs. Sparkman stopped briefly at the intersection, saw the red arrow, but drove into the intersection before the signal had changed, causing the collision. Police officers had earlier reported the confusion the signal was causing motorists. The traffic light had been changed for a two week trial period; Mrs. Sparkman's collision happened one week after the modified light had been installed.

The Court, in holding a waiver of immunity under the Tort Claims Act, relied on Subdivision 12 of Section 14, the predecessor of section 101.060(a)(2).

We agree with the Court of Civil Appeals that the term 'condition' in Subdivision 12 refers to either an intentional or an inadvertent state of being, and here the City was notified of the condition of the light and the problems it was causing.

*Id.* at p. 858. Because the modified condition of the light caused confusion among motorists, recovery against the City was proper.

Here, however, we do not have a modification of an existing traffic control device as in *Sparkman*. The traffic signal there was unique, and its uniqueness caused the confusion. Here a speed limit sign, posting the correct maximum speed, is involved.

Appellants argue that the existing speed limit is unreasonable for the highway near the junior high school; they do not contend that the condition of an existing sign is at issue, but rather that a different sign should be placed on the highway near the school stating a lower speed limit. A number of cases have construed the word "condition" as used in the Tort Claims Act. None of those cases support liability for circumstances where the plaintiffs' allege that a different speed limit should have been posted rather than the one that was.[2] Although the maxi

2. *Lorig v. City of Mission*, 629 S.W.2d 699, 700–01 (Tex.1982) (tree branches obstructing a stop sign were a condition of the sign within the meaning of the Tort Claims Act article 6252–19 section 14(12)); *Sparkman v. Maxwell*, 519

S.W.2d 852, 857–58 (Tex.1975) (defining "condition" as "an intentional or inadvertent state of being" applied to a traffic light which operated as intended but which endangered the public); *Texas Dep't of Transp. v. Henson*, 843 S.W.2d

mum speed allowed may have been excessive under the circumstances, because of the proximity of the school, there was nothing wrong with the *condition* of the sign itself.

The majority's holding nullifies the immunity of the state for the initial placement of a traffic or road sign reserved by section 101.-060(a)(1). I respectfully dissent.

648, 652 (Tex.App.–Houston [14th Dist.] 1992, writ denied) (attachment of a sign by nails to a barrel was a condition of the traffic control device); *Creek v. Texas State Dep't of Highways and Pub. Transp.*, 826 S.W.2d 797, 802 (Tex.App.–Houston [14th Dist.] 1992, writ denied) (adopting the definition in *Lawson*); *Lawson v. Estate of McDonald*, 524 S.W.2d 351, 356 (Tex.Civ.App.–Waco 1975, writ ref'd n.r.e.) ("condition … refers to the maintenance of a sign or signal in a condition sufficient to properly perform the function of traffic control for which it is relied upon by the travelling public."); *City of Denton v. Mathes*, 528 S.W.2d 625, 630 (Tex.Civ.App.–Fort Worth 1975, writ ref'd n.r.e.) (holding that condition included an intended, if dangerous, cycling of a traffic light).