Charles SHIVES, et al., Appellants,

v.

The STATE of Texas, et al., Appellees.

No. 08–87–00102–CV.

Court of Appeals of Texas,
El Paso.

Dec. 16, 1987.
Rehearing Denied Jan. 13, 1988.

James F. Scherr, Law Offices of James Franklin Scherr, El Paso, for appellants.

Jim Mattox, Atty. Gen., Richard D. Naylor, Asst. Atty. Gen., Austin, for appellees.

Before SCHULTE, FULLER and WOODARD, JJ.

OPINION

SCHULTE, Justice.

Appeal is from a summary judgment. The suit is one for personal injuries and wrongful death arising out of an automobile collision at the intersection of Westside Drive (Westside) and Country Club Road (Country Club) in El Paso County, Texas. We affirm.

The intersection in question was designed and constructed in September, 1956. On June 12, 1984, Brenda Theriot Shives drove her car on Westside toward its intersection with Country Club. Upon reaching the intersection, Mrs. Shives stopped at the stop sign located on a concrete island at the intersection. After stopping briefly, she accelerated into the intersection, intending to make a left turn onto Country Club. In the intersection, her car was struck by a westbound van driven by Stanley C. Lopez. As a result of injuries suffered in the collision, Mrs. Shives died. Suit was brought by her estate, husband and parents, as well as by the parents of Thomas J. Theriot, a minor passenger in the Shives vehicle. The action was brought against the State of Texas and the State Department of Highways and Public Transportation, as well as against the driver and owner of the van which struck the Shives vehicle. The suit as to Stanley Lopez, the driver of the van, and as to Diane Lopez, the owner of the van, was settled and severed. We will hereafter refer to the State of Texas and to the State Department of Highways and Public Transportation as the State.

Appellants' points of error assert the trial court erred in "holding" the Texas Tort Claims Act inapplicable and in "holding" as a matter of law that the State was not guilty of any negligence or nuisance proximately causing the accident. We are unable to find any "holdings" of that nature in the judgment or elsewhere in the record. However, we will consider those assertions in connection with Appellants' third point that the trial court erred in granting the summary judgment because there was "no legal reason to grant it."

Questions of negligence and proximate cause are usually issues of fact which cannot be determined on motion for summary judgment. *McGuire v. Overton Memorial Hospital*, 514 S.W.2d 79 (Tex.Civ.App.—Tyler 1974, writ ref'd n.r.e.). However, a motion for summary judgment may be based on a showing that the cause of action is barred as a matter of law by the affirmative defense of governmental immunity. *Jackson v. City of Corpus Christi*, 484 S.W.2d 806 (Tex.Civ.App.—Corpus Christi 1972, writ ref'd n.r.e.). Furthermore, where it appears that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law, the judgment shall be rendered forthwith. Rule 166–A, Tex.R.Civ.P.

Appellants' reliance on theories of common-law negligence and nuisance in regard to the State is ill-placed. The cases cited by Appellants relating to common-law negligence concern municipalities and proprietary function and have no application. Nuisance is equally inapplicable. See our *Callaway v. City of Odessa*, 602 S.W.2d 330 (Tex.Civ.App.—El Paso 1980, no writ). To recover, facing the doctrine of governmental immunity, the Appellants must do so under the Texas Tort Claims Act, and we believe, in that respect, they likewise are precluded. Our references to the Texas Tort Claims Act (hereafter referred to as the Act) will be to the provisions of Tex.Rev.Civ.Stat.Ann. art. 6252–19 in effect at the time of the collision in question. The Act is now contained in the Civil Prac-

tice and Remedies Code sec. 101.001, et seq.

Appellants' principal thrust is directed at the "skewed design of the intersection." That design and construction took place in 1956, some fourteen years prior to the effective date of the Act. Under the Act, the State can only be held liable for acts and omissions occurring after January 1, 1970. See: Sections 14 and 22 of the Act. Furthermore, it would appear that the design used in constructing a roadway falls within the realm of exercise of discretion set forth in Section 14(7) of the Act, as more fully discussed hereafter in regard to other complained of acts and omissions.

The other complained of acts and omissions include the assertions that the State was negligent in not reducing the speed limit on Country Club Road; in failing to place a traffic light at the intersection; in the maintenance of the intersection; and, in the manner of installing a stop sign and stop bar at the intersection.

In the Act at Section 14(7), entitled "Exemptions," it is provided in part that the provision of the Act shall not apply to the failure to perform any act which is not required by law and the performance or nonperformance of which is left to the unit of government. Under those circumstances, the decision not to do the act, or a failure to make a decision thereon, is not actionable under the Act. This discretionary provision, we believe, obviates Appellants' complaints regarding the speed limit and the absence of a traffic light. Furthermore, specifically in regard to the traffic light, Section 14(12) of the Act provides under exemptions, in part, that "[n]othing herein shall give rise to liability" from the failure to initially place any signs, signals or devices when such failure is a result of discretionary acts.

As to the maintenance assertion, Tex.Rev.Civ.Stat.Ann. art. 6674q–4 (Vernon Supp.1987) prescribes that the Highway Department shall provide for the efficient maintenance of all highways. "Maintenance" means that which is required to preserve the highway as it was originally designed and constructed. *Burnett v. Texas Highway Department*, 694 S.W.2d 210 (Tex.App.—Eastland 1985, no writ). Appellants argue that the State replaced a caved-in portion of the road in question. The State also replaced guardrails damaged in accidents which occurred under circumstances unrelated to those of the Shives accident. In addition to other minor repairs and maintenance, the State fortified with concrete a triangular area which had been formed over time by the passage of cars making right turns from Westside onto Country Club. There is no evidence that the road was redesigned in the sense of adding lanes or changing the course of the road. The road was left materially and substantially the same. An examination of the record and evidence reveals that the addition of the island did not alter the design of the intersection in any way that was material to the Shives accident. Any changes that were made through the addition of the traffic island did not detract from the decedent driver's ability to see up the road in the direction from which traffic was coming. None of the alterations could be said to have contributed to the accident in question. Furthermore, one of the Appellants, Thomas Theriot, who was in the Shives vehicle at the time of the accident, admitted in deposition testimony that there was a clear view from the intersection of traffic coming down Country Club. Theriot further stated that there was nothing to keep the decedent driver, Brenda Shives, from seeing the oncoming van which struck her.

Appellants also contend that the State was negligent in the manner in which it installed a stop sign and stop bar in 1983 because the installation was not done in strict compliance with the Texas Highway Department Manual. Appellants did not indicate what the manual is, or what force or authority it bears. Also in respect to the stop sign which faced the decedent driver Shives on the day of the accident are the facts that (1) the sign was unobstructed, and (2) she knew of the sign. There is no dispute that the sign was visible, nor is there any dispute about whether Shives

was familiar with the intersection and the need to stop there. She had driven through the intersection many times. The fact that she actually stopped at the sign is uncontested. Were any viable duty on the State shown with regard to the intersection, the duty would only require that the State *either* make the condition reasonably safe *or* warn the driver. As this Court held in *Smith v. State*, 716 S.W.2d 177 (Tex.App.—El Paso 1986, writ ref'd n.r.e.), one of the cases cited by Appellants in support of their position, a sign indicating that a resurfaced section of road was "slippery when wet" was sufficient under Texas law to alert a driver that a hazardous condition existed. The duty upon the State to either warn of the hazard or correct it was thus discharged in that case. If a "slippery when wet" sign is adequate warning, it would follow *a fortiori* that a stop sign is adequate warning. There is no issue of fact as to whether the State adequately warned the decedent of impending danger on Country Club Road.

In addition, the placing of stop signs is discretionary in nature and, therefore, exempted by the previously discussed Section 14(7) of the Act. What is more, Tex. Rev.Civ.Stat.Ann. art. 6701d, sec. 30 (Vernon 1977), states in part that "[t]he State Highway Department may place and maintain, or ... provide for such placing and maintaining such a traffic-control devices, ... upon all State highways *as it may deem necessary*, to indicate and carry out the provisions of this Act or to regulate, warn, or guide traffic." [Emphasis added.]

Finally, the State emphasizes, and we believe correctly, that the undisputed facts show that Brenda Shives was well acquainted with the intersection, was aware of the stop sign in question and in fact stopped her vehicle in compliance therewith. As tragic as her failure to do so may have been, Mrs. Shives had a duty by statute to remain stopped at the stop sign until she could enter the intersection in question with safety. Tex.Rev.Civ.Stat. Ann. art. 6701d, secs. 71 and 73 (Vernon 1977).

Accordingly, we overrule the points of error and affirm the judgment of the trial court.