Gordon DUNN and Sally
Dunn, Appellants,

v.

The CITY OF TYLER, Texas, Appellee.

No. 11–92–111–CV.

Court of Appeals of Texas,
Eastland.

Feb. 4, 1993.

David T. Altenbern, William J. Robertson, Altenbern & Arkell, Houston, for appellants.

Thomas W. Reardon, Jr., Reardon & Assoc., R. Brad Burger, District Clerk, Tyler, for appellee.

## OPINION

McCLOUD, Chief Justice.

Appellants, Gordon and Sally Dunn, sued the City of Tyler under the Texas Tort Claims Act, TEX.CIV.PRAC. & REM.CODE ANN. § 101.001 et seq. (Vernon 1986 & Supp. 1993), for injuries suffered as a result of an automobile-motorcycle accident. The trial court granted summary judgment for the City. We affirm.

The accident occurred at the intersection of South Beckham Avenue and East Lake Street. Gordon Dunn entered the intersection traveling west on East Lake Street on his motorcycle. Gordon Dunn's motorcycle was struck by an eastbound automobile attempting to turn left off of East Lake Street onto South Beckham Avenue from the left-turn lane. Traffic proceeding straight ahead through the intersection from the eastbound and westbound lanes had the right-of-way at the time of the accident. Traffic turning left from either the eastbound or westbound lanes had a red light at the time of the accident.

### The City's Jurisdictional Challenge

The City contends that we do not have jurisdiction to consider this appeal because appellants have not timely perfected their appeal. See *Glidden Company v. Aetna Casualty and Surety Company*, 155 Tex. 591, 291 S.W.2d 315, 318 (1956). TEX. R.APP.P. 41(a)(1) provides that an appeal is to be perfected within 30 days after the judgment is signed or within 90 days after the judgment is signed if a timely motion for new trial has been filed. The trial court signed a judgment granting the City summary judgment on February 17, 1992. Appellants filed a motion for new trial attacking that judgment on March 12, 1992. On March 16, 1992, the trial court signed another judgment which granted the City the same relief.[1] Appellants filed a cash deposit in lieu of bond in order to perfect this appeal on May 13, 1992.

The City asserts that the time period for perfecting this appeal ended on April 15, 1992, 30 days after the second judgment was signed. See TEX.R.CIV.P. 329b(h). This argument is based on the premise that the motion for new trial filed by appellants was insufficient to extend the time period for appealing from the second judgment. TEX.R.CIV.P. 306c provides that a motion for new trial shall not be ineffective because it is prematurely filed and that it is to be deemed filed on the date of the signing of the judgment the motion assails. Appellants' motion for new trial only refers to the first judgment. The City argues that Rule 306c is of no benefit to appellants' motion because the motion does not mention the second judgment. We disagree with the City's interpretation of Rule 306c.

In *Miller v. Hernandez*, 708 S.W.2d 25 (Tex.App.—Dallas 1986, no writ), an almost identical situation was presented to the court. The *Miller* court construed former TEX.R.CIV.P. 377a, now TEX.R.APP.P. 58, as authorizing a court to consider a motion for new trial relating to an earlier judgment as applicable to a corrected judg-ment when the substance of the motion is such as could properly be raised with respect to the corrected judgment. *Miller v. Hernandez*, supra at 27.

Rule 58(c) provides:

[I]f the trial court has signed an order modifying, correcting, or reforming the order appealed from, or has vacated that order and signed another, any proceedings relating to an appeal of ·the first order may be considered applicable to the second.

We agree with the reasoning in *Miller*. We hold that a motion for new trial relating to an earlier judgment may be considered a premature motion within the provisions of Rule 306c and Rule 58 so as to apply to a corrected judgment "when the substance of the motion is such as could properly be raised with respect to the corrected judgment." *Miller v. Hernandez*, supra at 27. Appellants' motion for new trial asserted that the granting of summary judgment for the City on the grounds of governmental immunity was improper. Appellants' motion for new trial attacking the first judgment was effective to extend the time for perfecting the appeal until 90 days after the second judgment was signed because the grounds raised in the motion could be properly raised with respect to the second judgment.

### The City's Duty to Install Sign

TEX.CIV.PRAC. & REM.CODE ANN. § 101.0215(a)(21) and (31) (Vernon Supp. 1993) provides that a municipality may be liable under the Tort Claims Act for damages arising from its governmental functions pertaining to the regulation of traffic and the maintenance of traffic signals, signs, and hazards. The Tort Claims Act does not waive sovereign immunity for a claim based on the failure of a governmental unit to perform an act that the unit is not required by law to perform. TEX.CIV. PRAC. & REM.CODE ANN. § 101.056(1) (Vernon 1986). Similarly, TEX.CIV.PRAC. & REM. CODE ANN. § 101.060(a)(1) (Vernon 1986)

---

1. The trial court set out the grounds upon which it granted summary judgment in the first judgment. The only difference between the first judgment and the second judgment is that the second judgment does not contain the grounds upon which summary judgment was granted.

provides that the Act does not apply to a claim arising from:

> [T]he failure of a governmental unit initially to place a traffic or road sign, signal, or warning device if the failure is a result of discretionary action of the governmental unit.

The question we must resolve is whether or not the City had a nondiscretionary duty to install a "left turn signal" or similarly-worded sign adjacent to a set of traffic signal lights controlling an exclusive left-turn lane.

The record reflects that eastbound traffic on East Lake Street was controlled by three sets of traffic signal lights. Viewing the signal lights from left to right, the first set of signal lights regulated traffic turning left off of East Lake Street onto South Beckham Avenue. This set of traffic lights was located directly above the exclusive left-turn lane. The second and third sets of signal lights regulated motorists proceeding straight through the intersection and those turning right. The second set of signal lights was located directly above the thru-traffic lane. The third set of signal lights was located to the right of East Lake Street.

The driver of the automobile, Elmenree Jackson, approached the intersection in the left-turn lane for the purpose of making a left turn. All eastbound traffic had a red light when Jackson arrived at the intersection. It is undisputed that the set of signal lights regulating traffic turning left displayed a red light at the time of the accident. Jackson attempted to turn left when the traffic lights controlling thru-traffic changed from red to green. Jackson stated that she believed that the second set of lights controlled traffic turning left. Appellants contend that the City was negligent for failing to install a traffic sign

informing drivers that the first set of signal lights controlled traffic turning left.

Appellants contend that the 1988 Manual on Uniform Traffic Control Devices placed a nondiscretionary duty upon the City to install the sign. Section 4B–6 of the Manual provides that a circular green signal and a circular red signal "shall not be simultaneously displayed in different signal faces on any one approach" unless one of three conditions exists.[2] One of these conditions allows for one of the signal faces being a turn signal "controlling only a separately controlled lane" if a "left turn signal" sign is located adjacent to such signal face. Section 1A–5 of the Manual states that the word "shall," as used in the Manual, is intended to denote a mandatory condition. The 1980 edition of the Manual provided that traffic control devices not previously required but which were required by new standards in the Manual should be installed prior to December 1982. 1980 Manual at 1–viii.[3]

The provisions of the Manual referred to above suggest that the City had a mandatory obligation to install the sign. However, cases dealing with other seemingly mandatory provisions of the Manual suggest a different result. In *State Department of Highways and Public Transportation v. King,* 795 S.W.2d 888, 892 (Tex.App.—Beaumont 1990), *writ den'd per curiam,* 808 S.W.2d 465 (Tex.1991), the court of appeals held that the State had a nondiscretionary duty under the Manual to install certain lane-use control signs. The Supreme Court questioned this finding by pointing out that other provisions of the Manual indicate that the Manual's requirements are not mandatory in a "legal sense." State Department of Highways and Public Transportation v. King, supra at 466. More specifically, the Supreme Court cited Section 1A–4 of the Manual which

---

**2.** Apparently, "signal face" is the term used by the Manual to describe a single set of traffic signal lights.

**3.** Page 1–viii of the Manual was not presented to the trial court by appellants as a part of their summary judgment proof. We take judicial no-

tice of this "certification" page under Tex.R.Civ. Evid. 201(f) because it is a portion of a document promulgated by the State Highway and Public Transportation Commission pursuant to the provisions of Tex.Rev.Civ Stat.Ann. art. 6701d, § 29 (Vernon 1977).

suggests that the provisions of the Manual are only advisory.[4]

The court in *Villarreal v. State*, 810 S.W.2d 419 (Tex.App.—Dallas 1991, writ den'd), also refused to hold that the State or the City of Dallas had a nondiscretionary duty to install traffic signs "required" by the Manual. The court relied upon the permissive nature of the "may" language contained in TEX.REV.CIV.STAT.ANN. art. 6701d, § 31 (Vernon 1977) in ruling that the erection of the signs was discretionary.[5] *Villarreal v. State*, supra at 420.

We agree with the reasoning of the Supreme Court in *King* and the Dallas court in *Villarreal*. The Manual did not place a mandatory obligation upon the City to install the sign because of the discretionary language contained in Section 1A–4 of the Manual and Article 6701d, section 31. No statutory cause of action is created by the Tort Claims Act because the City's failure to install the sign was a discretionary act. Therefore, the trial court's entry of summary judgment was proper.

The judgment of the trial court is affirmed.

---

4. Section 1A–4 of the Manual states:
   The decision to use a particular device at a particular location should be made on the basis of an engineering study of the location. Thus, while this Manual provides standards for design and application of traffic control devices, the Manual is not a substitute for engineering judgment. It is the intent that the provisions of this Manual be standards for traffic control devices installation, but not a legal requirement for installation.

5. Article 6701d, section 31 states:

Local authorities, in their respective jurisdiction, may place and maintain any traffic-control devices upon any highway under their jurisdiction as they may deem necessary to indicate and carry out the provisions of this Act, or local traffic ordinances, or regulate, warn or guide traffic. All such traffic-control devices hereafter erected shall conform to the State Highway Department's manual and specifications.