Jose BELLNOA and Carolyn Bellnoa, Appellants,

v.

The CITY OF AUSTIN, Appellee.

No. 3–94–238–CV.

Court of Appeals of Texas, Austin.

Jan. 18, 1995.

Motion to Publish Granted March 15, 1995.

Anthony Icenogle [Signed Brief], DeLeon & Boggins, P.C., Austin, for appellants.

Diana L. Granger, City Atty., Frederick A. Hawkins [Signed Brief], Asst. City Atty., City of Austin, Law Dept., Austin, for appellee.

T. Mark Rogstad, Wright & Greenhill, P.C., Austin, TX, for other interested parties.

Before CARROLL, C.J., and JONES and KIDD, JJ.

PER CURIAM.

Brian Joseph Bellnoa and Jeremiah J. Bellnoa, both minors, were injured when they were struck by a privately owned and operated truck while attempting to cross the street in the 3500 block of East First Street in Austin. Brian Joseph Bellnoa later died from his injuries. Appellants Jose Bellnoa and Carolyn Bellnoa (the Bellnoas) sued appellee the City of Austin (the City) for damages arising out of that accident, alleging various acts of negligence relating to the regulation of traffic.[1] The trial court rendered summary judgment in favor of the City on the basis that the City was protected from liability by sovereign immunity. The Bellnoas appeal, bringing three points of error. We will affirm the trial court's judgment.

## I. THE RELEVANT STATUTES

■ A municipality is immune from liability for its governmental functions in the absence of a statute waiving sovereign immunity.[2] *Wenzel v. City of New Braunfels,* 852 S.W.2d 97 (Tex.App.—Austin 1993, no writ). The Bellnoas brought their action against the City under the Texas Tort Claims Act ("the Tort Claims Act" or "the Act"), Tex.Civ.Prac. & Rem.Code §§ 101.001—101.109 (West 1986 & Supp.1995). Section 101.021 waives sovereign immunity by providing:

A governmental unit in the state is liable for:

(1) property damage, personal injury, and death proximately caused by the wrongful act or omission or the negligence of an employee acting within his scope of employment if:

   (A) the property damage, personal injury, or death arises from the operation or use of a motor-driven vehicle or motor-driven equipment; and

   (B) the employee would be personally liable to the claimant according to Texas law; and

(2) personal injury and death so caused by a condition or use of tangible personal or real property if the governmental unit would, were it a private person, be liable to the claimant according to Texas law.

Section 101.0215 further provides that:

(a) A municipality is liable under this chapter for damages arising from its governmental functions, which are those functions that are enjoined on a municipality by law and are given it by the state as part of the state's sovereignty, to be exercised by the municipality in the interest of the general public, including but not limited to:

   (3) street construction and design ...

   (20) warning signals ...

   (21) regulation of traffic ...

   (31) maintenance of traffic signals, signs, and hazards....

■ However, section 101.056 excepts from the waiver claims arising from discretionary acts[3] and omissions, providing:

This chapter does not apply to a claim based on:

(1) the failure of a governmental unit to perform an act that the unit is not required by law to perform; or

(2) a governmental unit's decision not to perform an act or on its failure to make a decision on the performance or nonperformance of an act if the law leaves the performance or nonperformance of the act to the discretion of the governmental unit.

Section 101.060 additionally excepts from the waiver claims arising from the placement or condition of traffic or road control devices in certain circumstances:

---

1. The Bellnoas also sued the driver of the truck. The driver settled with the Bellnoas and is not a party to this appeal.

2. However, a municipality is liable for its proprietary functions without a statutory waiver. *Wenzel v. City of New Braunfels,* 852 S.W.2d 97, 99 (Tex.App.—Austin 1993, no writ).

3. Although section 101.056, on its face, applies only to failures to act and omissions, the section has been judicially interpreted also to except positive acts of governments from liability under the Tort Claims Act if those acts are discretionary. *See, e.g., Christilles v. Southwest Tex. State Univ.,* 639 S.W.2d 38, 41 n. 2 (Tex.App.—Austin 1982, writ ref'd n.r.e.).

(a) This chapter does not apply to a claim arising from:

(1) the failure of a governmental unit initially to place a traffic or road sign, signal, or warning device if the failure is a result of discretionary action of the governmental unit;

(2) the absence, condition or malfunction of a traffic or road sign, signal, or warning device unless the absence, condition, or malfunction is not corrected by the responsible governmental unit within a reasonable time after notice; or

(3) the removal or destruction of a traffic or road sign, signal, or warning device by a third person unless the governmental unit fails to correct the removal or destruction within a reasonable time after actual notice.

## II. LIABILITY FOR DESIGN AND CONSTRUCTION

In their first point of error, the Bellnoas assert that the trial court erred in granting the City's motion for summary judgment because the City can be held liable · for the design and construction of the street upon which the accident occurred. The Bellnoas' second amended petition does not describe a specific construction or design flaw, but it appears from their answers to interrogatories, which were filed with the City's motion for summary judgment, that the "design flaws" complained of involved the City's failure to install allegedly appropriate traffic signals and crosswalks. The claim that a design defect existed, then, is simply a claim for that the City failed to initially install traffic signals and crosswalks. Therefore, we will discuss this point of error below in conjunction with the second point of error.

## III. LIABILITY FOR DECISION WHETHER TO PLACE TRAFFIC CONTROL DEVICES

In their second point of error, the Bellnoas allege that the trial court erred in granting the motion for summary judgment because the City of Austin can be held liable for its decision whether to place traffic control devices. Under section 101.060(a), a governmental unit is not liable for the failure to initially place a traffic or road sign, signal, or warning device if the failure is a result of the discretionary action of the governmental unit. The question of whether an act is discretionary is one of law. *Wenzel*, 852 S.W.2d at 99. The issue, then, is whether the City was required to install particular traffic signals at the site. The Bellnoas apparently rely on two documents [4] to establish a mandatory duty to install particular traffic control devices: the Texas Manual on Uniform Traffic Control Devices and the City of Austin School Safety Manual.

The Texas Supreme Court in *State Department of Highways and Public Transportation v. King*, 808 S.W.2d 465, 466 (Tex.1991), held that the Manual on Uniform Traffic Control Devices did not establish a mandatory duty to install particular traffic control devices. The basis for its holding was that the Manual expressly provided that, while it was a standard for design and application of traffic control devices, the manual was not a substitute for engineering judgment. [5] Although the Bellnoas do not allege that the accident occurred in a school zone, the other proof they offer of a mandatory duty is the City of Austin School Safety Manual. The School Safety Manual specifically provides that the policies and practices are intended to be *guidelines* for the installation of school traffic control devices and are *not intended* to replace sound traffic engineering judgment. This language is remarkably similar to the language in the Manual on Uniform Traffic Control Devices that the supreme

---

4. The Bellnoas do not explicitly state the basis of the mandatory duty in their pleadings, in their reply to the motion for summary judgment, or in their appellate brief, but did ask the trial judge to take judicial notice of these documents in their reply to the motion for summary judgment.

5. For other cases holding that the Manual on Uniform Traffic Control Devices does not establish a mandatory duty to install particular traffic control devices, see *Dunn v. City of Tyler*, 848 S.W.2d 305 (Tex.App.—Eastland 1993, no writ); and *Villarreal v. State*, 810 S.W.2d 419 (Tex. App.—Dallas 1991, writ denied).

court found was discretionary in *King*. We overrule the Bellnoas' first and second points of error.

## IV. LIABILITY FOR RAISING THE SPEED LIMIT

■ In their third point of error, the Bellnoas allege that the City was negligent in raising the speed limit from 30 to 40 miles per hour. A threshold issue is whether the alleged problem resulted from the decision to increase the speed limit from 30 to 40 miles per hour or whether it resulted from the sign displaying that limit. We hold that the source of the alleged problem is the City's decision to raise the speed limit.

In so holding, we decline to follow the decision in *Garza v. State*, 878 S.W.2d 671 (Tex.App.—Corpus Christi 1994, no writ), which held that a 45 mile-per-hour speed limit sign, which reflected the accurate speed limit, misled the public into believing that it was reasonable and safe to drive 45 miles per hour when this speed was actually excessive for the area. The court concluded that the discrepancy was a "condition" of the sign for which the state could be held liable under section 101.060(a)(2). We believe that the court's analysis in *Garza* ignores the fact that the speed limit is set by law and the posted sign is only an indicator of the legal speed limit. The source of the alleged problem, both in *Garza* and in this case, is the setting of the legal speed limit, not the sign displaying that limit.

The court in *Garza* based its decision primarily[6] on its reading of *Sparkman v. Maxwell*, 519 S.W.2d 852 (Tex.1975). In *Sparkman*, the Texas Supreme Court held that a stop light that displayed a red left-turn arrow, which confused some motorists into proceeding left on red, was a "condition" of the light for which the City of Wichita Falls could be held liable. We believe that *Spark-*

*man* can be distinguished because the traffic signal, while functioning as designed, was not functioning as desired: the City of Wichita Falls intended automobiles to stop on red, but the design of the light caused drivers to proceed on red. In *Sparkman*, the problem with the traffic signal was independent of the decision to place a signal at that site. Here, the speed limit sign is functioning as desired: the City decided that the proper speed limit for that section of the road is 40 miles per hour and the sign accurately reflects that decision. The Bellnoas do not allege a problem with the speed limit sign independent of the decision to set the speed limit at 40 miles per hour.

In *Alvarado v. City of Lubbock*, 685 S.W.2d 646 (Tex.1985), the court analyzed as a problem relating to a traffic device a situation in which a speed limit sign indicated that the speed limit was 55 miles per hour when the actual speed limit, as provided by city ordinance, was 50 miles per hour. Thus, in *Alvarado*, as in *Sparkman*, the problem with the traffic device was independent of the decision to set a particular speed limit. The Bellnoas do not allege that the posted speed limit was not the actual speed limit. *See also Shives v. State*, 743 S.W.2d 714, 715 (Tex. App.—El Paso 1987, writ denied) (court analyzed a claim that state was negligent for a failure to reduce speed limit under predecessor to section 101.056 while it analyzed a failure to place a traffic signal under predecessor to section 101.060). In *Shives*, the state's failure to lower the speed limit was not cast as a condition of the existing sign. We agree with the analysis in *Shives*.[7]

Since this case cannot be analyzed as a problem attributable to a traffic signal, the next issue is whether the Tort Claims Act waives the City's immunity for its decision to raise the speed limit. The Bellnoas claim that the City's immunity was waived by sec-

---

**6.** The court in *Garza* also quoted language from *City of San Antonio v. Schneider*, 787 S.W.2d 459 (Tex.App.—San Antonio 1990, writ denied), which was a "special defects" case rather than a case involving routine traffic signs and road control devices. *Garza*, 878 S.W.2d at 675.

**7.** The City urges that *Shives* is dispositive of this case. However, we must analyze this case further since the plaintiff in *Shives* did not claim

that section 101.0215 is an independent waiver of immunity. This case also requires further analysis since *Shives* involved a failure to lower a speed limit, which falls within the plain language of section 101.056, while this case involves the positive act of raising the speed limit, which must be analyzed under the case law interpreting discretionary acts.

tion 101.0215. The City's act of raising the speed limit falls under section 101.0215, which provides that a city is liable under the Tort Claims Act for damages arising from the regulation of traffic. However, we must also consider whether section 101.0215 is an independent waiver of immunity or whether it is subject to the conditions in section 101.021.

Section 101.0215 provides that a "municipality is liable under this chapter for damages arising from its governmental functions." Section 101.0215 then lists thirty-three different governmental functions, including the regulation of traffic. Several Texas courts have held that section 101.0215 is not a waiver of immunity because the words "under this chapter" limit the liability of the municipality for the listed functions under section 101.0215 to the conditions required under section 101.021. *See Alvarado v. City of Brownsville,* 865 S.W.2d 148 (Tex. App.—Corpus Christi 1994, writ granted); *Dalon v. City of DeSoto,* 852 S.W.2d 530, 535–36 (Tex.App.—Dallas 1992, no writ); *McKinney v. City of Gainsville,* 814 S.W.2d 862, 865–866 (Tex.App.—Fort Worth 1991, no writ); *see also* John T. Montford & Will G. Barber, *1987 Texas Tort Reform: The Quest for a Fairer and More Predictable Texas Civil Justice System,* 25 Hous.L.Rev. 59, 121 (1988).

A waiver of sovereign immunity must be clear and unambiguous. *University of Tex. Medical Branch v. York,* 871 S.W.2d 175 (Tex.1994); *Duhart v. State,* 610 S.W.2d 740, 742 (Tex.1980). Although the words "under this chapter" do not unequivocally provide that section 101.0215 is subject to section 101.021, neither do the words of section 101.0215 clearly and unambiguously waive sovereign immunity. Compare the language of section 101.0215 ("municipality *is*

*liable under this chapter*" for the listed activities) with the language of section 101.021 ("governmental unit in the state *is liable*" for the following acts). Also, the limitation is in keeping with the purpose of the legislative reforms that added section 101.0215. The findings and purposes section of the 1987 act that added section 101.0215 states that the legislature was concerned with the adverse effects that the lack of predictability in the state's justice system had on municipalities and that the legislation was intended to achieve predictability while preserving—not increasing—the rights of injured persons.[8] Act of June 16, 1987, 70th Leg., 1st C.S., ch. 2, § 1.01, 1987 Tex.Gen.Laws 37. This interpretation is also supported by comments made by Senator Montford, the principal author of the act.[9] *See* Montford & Barber, *supra* (liability from activities under section 101.0215 arise only out of those areas listed in section 101.021). Because the statutory language does not clearly and unambiguously waive sovereign immunity, and in view of the stated legislative intent, we hold that section 101.0215 is not an independent waiver of immunity.

Therefore, to determine whether a municipality may be held liable for governmental functions listed in section 101.0215, we must first determine whether the alleged harm meets the conditions of section 101.021, and must then determine whether governmental immunity is preserved because the act involves discretion that is committed to the government under section 101.056.

Under section 101.021, the government is liable for (1) property damage, personal injury, or death arising from the use and operation of a vehicle or (2) personal injury and death caused by a condition or use of tangible personal or real property if the governmental unit would, were it a private

---

8. However, note that persons who suffer property damage that was once compensable because the claim arose from a proprietary act of the municipality are now without a remedy if the act was reclassified as a governmental act and the property damage was not caused by the operation or use of a motor vehicle. *See, e.g., Dalon v. City of DeSoto,* 852 S.W.2d 530, 535–36 (Tex. App.—Dallas 1992, no writ).

9. The intent of single legislator, even a statute's principal author, is not controlling legislative history but may be persuasive authority. *General Chemical Corp. v. De La Lastra,* 852 S.W.2d 916, 923 (Tex.1993), *cert. dismissed* 510 U.S. ——, 114 S.Ct. 490, 126 L.Ed.2d 440. We cite Senator Montford's article in support of our interpretation of section 101.0215 since his statements comport with the statutory language and the statutorily-stated intent of the legislation.

person, be liable to the claimant according to Texas law. This case does not involve the operation or use of a motor vehicle under section 101.021(1) because the vehicle involved was not used or operated by an employee of the City. *Luna v. Harlingen Consol. Indep. Sch. Dist.*, 821 S.W.2d 442 (Tex. App.—Corpus Christi 1991, writ denied) (layout of school bus stop that required children to stand in traffic lane was not operation or use of motor vehicle); *Heyer v. North E. Indep. Sch. Dist.*, 730 S.W.2d 130 (Tex. App.—San Antonio 1987, writ ref'd n.r.e.) (waiver of immunity was inapplicable to suit arising from fellow students' loss of control of his automobile on school premises because vehicle was not owned or operated by agent of school district); *Jackson v. City of Corpus Christi*, 484 S.W.2d 806 (Tex.Civ.App.—Corpus Christi 1972, writ ref'd n.r.e.) (failure of police to direct traffic around stalled vehicle was not operation or use of motor vehicle).

The Texas Supreme Court recently affirmed this interpretation of section 101.021(1) in *LeLeaux v. Hamshire–Fannett Indep. Sch. Dist.*, 835 S.W.2d 49 (Tex.1992). In *LeLeaux*, the court considered whether a school district was liable for injuries that a student suffered when she hit her head on the bus while jumping into it through the emergency door. The court said:

> "The phrase, 'arises from,' requires a nexus between the injury negligently caused by a governmental employee and the operation or use of a motor driven vehicle or piece of equipment. While the statute does not specify whose operation or use [of motor driven vehicles or equipment] is necessary—the employee's, the person who suffers injury, or some third party—we think the more plausible reading is that the required operation or use is that of the [government] employee."

*Id.* at 51.

■ Additionally, the act of changing the speed limit does not appear to involve the condition or use of tangible personal or real property, even if the decision to change the ordinance is reduced to paper. *See Robin-*

*son v. City of San Antonio*, 727 S.W.2d 40 (Tex.App.—San Antonio 1987, writ ref'd n.r.e.) (protective order is a pronouncement of court and does not constitute tangible property even if reduced to paper). *See also University of Tex. Medical Branch v. York*, 871 S.W.2d 175 (Tex.1994) (information is intangible).

■ Finally, the decision to raise the speed limit is a decision committed to the City's discretion under section 101.056. *Eakle v. Texas Dep't of Human Servs.*, 815 S.W.2d 869, 874 (Tex.App.—Austin 1991, writ denied) (number and nature of regulations regarding minimum qualifications to operate a day care is left to agency discretion); *Shives*, 743 S.W.2d at 715 (failure to lower speed limit was discretionary under predecessor to section 101.056). The documents apparently offered by the Bellnoas to establish a mandatory duty to set a particular speed limit, the City of Austin School Safety Manual and the Texas Department of Highways & Public Transportation's Procedure for Establishing Speed Zones, do not do so. The City of Austin School Safety Manual, discussed above, does not impose a non-discretionary duty on the City to set a particular speed limit. The Texas Department of Highways & Public Transportation's Procedure for Establishing Speed Zones[10] was published for use by the State Highway and Public Transportation Commission in setting speed limits on state highways and does not bind the City in any fashion. We overrule the Bellnoas' third point of error.

The judgment of the trial court is affirmed.

---

10. The Texas Department of Highways & Public Transportation's Procedure for Establishing Speed Zones was the third of three documents of which the Bellnoas asked the trial court to take judicial notice.