# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-18-00139-CV

**City of Killeen, Appellant**

**v.**

**Mary Cheney, Surviving Spouse of Decedent Eric Cheney, Appellee**

### FROM THE DISTRICT COURT OF BELL COUNTY, 169TH JUDICIAL DISTRICT
### NO. 286,720-C, HONORABLE GORDON G. ADAMS, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Appellee Mary Cheney sued the City of Killeen for damages arising from a traffic accident that resulted in the death of her husband, Eric Cheney. *See* Tex. Civ. Prac. & Rem. Code §§ 71.002, .004 (wrongful death and survival action). The City filed a plea to the jurisdiction asserting that Cheney's suit was barred by governmental immunity. In response, Cheney argued that the City's immunity was waived under the Texas Tort Claims Act. *See id.* §§ 101.001-.109. After the trial court denied the plea to the jurisdiction, the City filed this interlocutory appeal. *See id.* § 51.014(a)(8). For the reasons that follow, we reverse the trial court's order and dismiss Cheney's claims against the City for lack of jurisdiction.

## BACKGROUND

The 2016 accident that is the subject of Cheney's lawsuit occurred on Rosewood Drive, a city street located in Killeen, Texas, at a traffic interchange that is referred to by the parties

as the Rosewood Interchange. Opened to motorists in 2015, the Rosewood Interchange is located at the point where Highway US 190 crosses over Rosewood Drive, and the accident that resulted in Eric Cheney's death occurred at a portion of the Interchange consisting of two separate but sequential intersections on Rosewood Drive between the frontage roads running parallel to US 190.

The entire Rosewood Interchange, including the location and type of traffic signals used at the two intersections, was designed by HDR Engineering, Inc. Although the engineering plans allowed for operation of the traffic signals at the intersections in a variety of modes, the City ultimately decided that a three-phase signal operation would best meet the traffic needs at the Interchange.[1] However, according to the City, it was unable to obtain certain parts necessary for the installation and operation of additional traffic detection cameras at the Rosewood Interchange when it first opened to the public. Because these additional cameras were necessary for the intended three-phase signal operation, the City initially placed the traffic signals into four-phase signal operation.

On February 10, 2016, after the necessary traffic detection cameras had been successfully installed, a representative with the City, Billy Stottler, began work on switching the traffic signals at the Rosewood Interchange from four-phase signal operation to three-phase signal operation, as originally intended by the City. According to Stottler, the reprogramming of the signals was completed by 10:00 a.m., and he observed that the signals were fully operational, without any defect or malfunction. He also observed that traffic was moving through the Rosewood Interchange with no apparent problem.

---

[1] According to the City, in four-phase signal operation, traffic traveling on Rosewood Drive will typically receive a green light at both intersections at the same time. In three-phase operation, traffic traveling on Rosewood Drive will not typically receive a green light at both intersections.

2

Satisfied that the signals were operating successfully, Stottler left for lunch at around 11:45 a.m. Approximately fifteen minutes later, Eric Cheney was traveling northbound on Rosewood Drive on his motorcycle when he approached a green signal at the first intersection at the Rosewood Interchange. As Eric Cheney entered the second intersection, he was struck by an SUV traveling westbound and died at the scene. Six days later, after several additional accidents occurred at the second intersection, the City erected a large sign warning motorists: "TRAFFIC SIGNAL TIMING CHANGE USE CAUTION."

Cheney later filed suit against the City, the Texas Department of Transportation, and others. In her original petition, Cheney asserted that the traffic signal at the Rosewood Interchange malfunctioned by erroneously signaling a "double green," meaning the traffic signals for intersecting directions of traffic displayed a green light at the same time, as Eric Cheney approached. In response, the City filed a plea to the jurisdiction asserting that Cheney's claims were barred by governmental immunity. The City attached several affidavits, including one from Stottler, challenging Cheney's theory that the signals were defective or malfunctioning at the time of the accident.

Cheney later amended her petition to change her liability theory, dropping her claim that the traffic signal had malfunctioned by signaling a "double green." According to Cheney's amended pleadings, Eric Cheney received a green light at the first intersection at the Interchange and then erroneously assumed he would also have a green light at the second intersection "just as he would have on every day prior thereto at this exact intersection, and every other diamond interchange in Killeen." Under Cheney's amended theory, the City's change from a four-phase signal operation to a three-phase signal operation created an unreasonably dangerous condition

3

for motorists and "[b]ased on prior experiences, the City had actual knowledge that implementing a drastic change to the traffic signals' programming with no advance warning whatsoever would likely cause traffic fatalities."

In addition, Cheney alleged that the City negligently implemented the signal change when it reprogrammed the traffic signal "on a high volume traffic day (Wednesday, the middle of the week) and during peak periods of public use (the end of the morning commute through the lunch hour) without any warning or advanced notice to the traveling public that a change had been implemented that would not conform to their expectations." In response to the City's plea to the jurisdiction, Cheney argued that the City's plea should be denied because she had sufficiently alleged a premises-defect claim based on the City's negligent implementation of a policy decision for which immunity was waived under the Texas Torts Claim Act. *See Stephen F. Austin State Univ. v. Flynn*, 228 S.W.3d 653, 657 (Tex. 2007) (noting distinction in context of waiver of immunity between negligent formulation of policy and negligent implementation of policy).

The trial court denied the City's plea to the jurisdiction and this appeal followed.

**STANDARD OF REVIEW**

A plea to the jurisdiction is a dilatory plea that seeks dismissal of a case for lack of subject-matter jurisdiction. *Harris Cty. v. Sykes*, 136 S.W.3d 635, 638 (Tex. 2004). In reviewing a trial court's ruling on a plea to the jurisdiction, we begin with the plaintiff's live pleadings and determine if the plaintiff has alleged facts that affirmatively demonstrate the trial court's jurisdiction. *Texas Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004). We construe the plaintiff's pleadings liberally, taking all factual assertions as true, and look to the plaintiff's intent.

4

*Id.* If the pleadings fail to allege sufficient facts to affirmatively demonstrate the trial court's jurisdiction but do not affirmatively demonstrate incurable defects in jurisdiction, the issue is one of pleading sufficiency, and the plaintiff should be afforded the opportunity to amend. *Id.* at 226-27. If, on the other hand, the pleadings affirmatively negate the existence of jurisdiction, then a plea to the jurisdiction may be granted without allowing the plaintiff an opportunity to replead. *Id.* at 227.

In addition, if a plea to the jurisdiction challenges the existence of jurisdictional facts, the court should consider evidence submitted by the parties and must do so when necessary to resolve the jurisdictional issues raised. *Id.* at 226 (citing *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 555 (Tex. 2000)). When the challenged jurisdictional facts implicate the merits of plaintiff's claims, as is the case here, the party asserting the plea must overcome a burden similar to a movant's burden on a traditional summary-judgment motion. *Id.* at 227-28; *Bacon v. Texas Historical Comm'n*, 411 S.W.3d 161, 171 (Tex. App.—Austin 2013, no pet.); *see* Tex. R. Civ. P. 166a(c). That is, the party asserting the plea must negate the existence of the challenged jurisdictional facts, which we would otherwise presume to be true. *Bacon*, 411 S.W.3d at 171. To meet its burden, the governmental unit asserting the plea must present evidence to support its assertion, which then shifts the burden to the plaintiff to show that a disputed material fact exists regarding the jurisdictional issue. *Miranda*, 133 S.W.3d at 228. If the relevant evidence (1) is undisputed and establishes that there is no jurisdiction, or (2) is disputed but fails to raise a fact issue regarding the jurisdictional issue, the trial court rules on the plea to the jurisdiction as a matter of law. *Id.* at 227-28.

Because subject-matter jurisdiction is a question of law, we review a trial court's ruling on a plea to the jurisdiction de novo. *Id.* at 226. "Our ultimate inquiry is whether the plaintiff's

pleaded and un-negated facts, taken as true and liberally construed with an eye to the pleader's intent, would affirmatively demonstrate a claim or claims within the trial court's jurisdiction." *Brantley v. Texas Youth Comm'n*, 365 S.W.3d 89, 94 (Tex. App.—Austin 2011, no pet.).

## BACKGROUND LAW

When performing governmental functions, political subdivisions of the State, like municipalities, are protected by governmental immunity. *See City of Galveston v. State*, 217 S.W.3d 466, 467-69 (Tex. 2007). Governmental immunity is derived from, or is an aspect of, the State's sovereign immunity. *See Reata Constr. Corp. v. City of Dall.*, 197 S.W.3d 371, 374 (Tex. 2006). Like sovereign immunity, governmental immunity deprives Texas courts of subject-matter jurisdiction over suits against municipalities, absent legislative waiver. *Id.* at 374.

The Texas Tort Claims Act provides a limited waiver of governmental immunity for certain torts. *See* Tex. Civ. Prac. & Rem. Code § 101.025. Section 101.021 of the Act, entitled "Governmental Liability," allows a plaintiff to bring suit against a governmental unit for three categories of claims when certain statutory criteria are met: (1) claims for injury arising from use of motor vehicles; (2) claims for injury caused by a condition or use of tangible personal property; and (3) premises-defect claims.[2] *Sampson v. University of Tex. at Austin*, 500 S.W.3d 380, 385-86 (Tex.

---

[2] Section 101.021 of the Tort Claims Act states, "A governmental unit in the state is liable for: (1) property damage, personal injury, or death proximately caused by the wrongful act or omission or the negligence of an employee acting within his scope of employment if: (A) the property damage, personal injury, or death arises from the operation or use of a motor-driven vehicle or motor-driven equipment; and (B) the employee would be personally liable to the claimant according to Texas law; and (2) personal injury and death so caused by a condition or use of tangible personal or real property if the governmental unit would, were it a private person, be liable to the claimant according to Texas law." Tex. Civ. Prac. & Rem. Code § 101.021.

2016); *see* Tex. Civ. Prac. & Rem. Code § 101.021. With respect to a premises-defect claim, "[s]ection 101.022 modifies the elements of a premises-defect theory otherwise imported from the common law by generally limiting the governmental unit's duty owed to the claimant 'only [to] the duty that a private person owes a licensee on private property.'"[3] *Texas Facilities Comm'n v. Speer*, __S.W.3d__, No. 03-17-00244-CV, 2018 WL 4171257, at *6 (Tex. App.—Austin Aug. 31, 2018, no pet.) (citing section 101.022(a) of the Act). Under this duty, a landowner must not injure a licensee by willful, wanton, or grossly negligent conduct, and must use ordinary care to warn the licensee of, or make reasonably safe, an unreasonably dangerous condition of which the landowner has actual knowledge, and the licensee does not. *County of Cameron v. Brown*, 80 S.W.3d 549, 555 (Tex. 2002).

There are, however, exceptions to the waiver of immunity provided by section 101.021 of the Act. *See* Tex. Civ. Prac. & Rem. Code §§ 101.051-.067. First, under section 101.056, even if waiver could be established under section 101.021, a governmental unit retains its immunity from claims arising from its discretionary acts and omissions. *See Texas Dep't of Transp. v. Garza*, 70 S.W.3d 802, 806 (Tex. 2002) (citing section 101.056 of the Act). The purpose of this discretionary-function exception to waiver of immunity is to avoid judicial review of government policy decisions. *Flynn*, 228 S.W.3d at 657 (citing *State v. Terrell*, 588 S.W.2d 784, 787 (Tex. 1979)).

---

[3] In part, section 101.022, entitled "Duty Owed: Premise and Special Defects," states, "(a) Except as provided in subsection (c), if a claim arises from a premise defect, the governmental unit owes to the claimant only the duty that a private person owes to a licensee on private property, unless the claimant pays for the use of the premises." *Id.* § 101.022(a). In turn, subsection (c) states, "If a claim arises from a premise defect on a toll highway, road, or street, the governmental unit owes to the claimant only the duty that a private person owes to a licensee on private property." *Id.* § 101.022(c)

Similarly, under section 101.060, the governmental unit retains immunity for certain types of claims related to traffic and road control devices under certain conditions. Tex. Civ. Prac. & Rem. Code § 101.060 ("Traffic and Road Control Devices"). Pertinent to this case, under subsection (a)(2), the governmental unit retains immunity from claims arising from "the absence, condition, or malfunction of a traffic or road sign, signal, or warning device unless the absence, condition, or malfunction is not corrected by the responsible governmental unit within a reasonable time after notice." *Id.*

With this statutory framework in mind, we turn to the parties' arguments in this appeal.

**ANALYSIS**

In one issue on appeal, the City asserts that the trial court erred in denying its plea to the jurisdiction because Cheney failed to establish waiver under section 101.060(a)(2) of the Act. According to the City, Cheney's claim is governed exclusively by section 101.060(a)(2) because it is "based on the condition of the traffic signals at the Rosewood Interchange on February 6, 2016." As the City points out, the term "condition," as used in section 101.060 with regard to traffic signals, means that the traffic signal was either (1) unable to convey the intended traffic control information, or (2) conveyed traffic control information other than what was intended. *See Garza*, 70 S.W.3d at 807 (concluding that speed limit posted on sign, which plaintiff alleged was too high for location, was not "condition" under section 101.060(a)(2) because sign correctly conveyed speed limit as set). According to the City, Cheney has not alleged any facts suggesting that the traffic signal at the Rosewood Interchange was malfunctioning or in a condition such that it was unable to convey the intended traffic control information, and further, the undisputed evidence establishes that there

8

was, in fact, no malfunction or condition of the traffic signal at the time of Eric Cheney's accident. Thus, the City reasons, Cheney has failed to establish a valid waiver of immunity under section 101.060(a)(2). Alternatively, the City argues that the decision to change the sequence of the traffic signal and the decision to not erect a temporary warning sign were both discretionary decisions for which immunity is retained under section 101.056 of the Texas Torts Claim Act.

In response, Cheney does not dispute that she has not sufficiently pleaded a claim arising from the "the absence, condition, or malfunction of a traffic . . . signal" under section 101.060(a)(2) or any other subsection of section 101.060. In other words, Cheney does not contend that the change in the traffic signal sequence constitutes a "condition" or "malfunction" of the traffic signal under section 101.060(a)(2) such that the City had a duty to correct the signal within a reasonable time after notice. *See* Tex. Civ. Prac. & Rem. Code § 101.060(a)(2). Cheney asserts that her claim is not governed by section 101.060 at all but is instead a general premises-defect claim governed by section 101.021 and section 101.022.

In addition, Cheney argues that the City is incorrect in its assertion that her premises-defect claim is excepted from waiver under section 101.056 because, according to Cheney, the claim does not arise from a discretionary act. Specifically, Cheney asserts that her premises-defect claim is *not* based on the City's decision to change the signal sequence of the light at the Rosewood Interchange—which she concedes was a discretionary decision—but instead arises from the City's negligent implementation of that decision. *See Flynn*, 228 S.W.3d at 657 ("When the government in the exercise of its discretion decides to act, however, a distinction is drawn between the negligent formulation of policy, for which sovereign immunity is preserved, and the negligent implementation of policy, for which immunity is waived.").

9

**Section 101.060(a)(2), Traffic and Road Control Devices**

We turn first to the City's argument that Cheney's claim is governed by section 101.060(a)(2) of the Act and that Cheney's claim should be dismissed because she has failed to demonstrate a waiver of immunity under this provision.

Although not entirely clear, the City's argument regarding section 101.060(a)(2) appears to be premised on the assumption that this provision creates an independent and exclusive waiver of immunity for claims involving traffic and road control devices. This assumption, however, is incorrect. Within the framework of the Tort Claims Act, section 101.060 is contained in subchapter C, entitled "Exclusions and Exceptions," *see* Tex. Civ. Prac. & Rem. Code §§ 101.051-.067, and "imposes special limitations on a waiver of immunity otherwise effected by Section 101.021" for certain types of claims involving traffic and road control devices. *Speer*, 2018 WL 4171257, at *3. Therefore, a plaintiff may proceed on a claim that is not the type of claim to which section 101.060 applies—even one that generally involves a "traffic" or "road control device"—so long as it is otherwise a claim for which immunity has been waived under section 101.021 and to which no other exception to waiver in the Act applies. *See id.* at *6 (explaining that section 101.021 is not "a stand-alone waiver of immunity that is independent and mutually exclusive of Section 101.021's waiver of immunity for premises-defect claims"); *Bellnoa v. City of Austin*, 894 S.W.2d 821, 825 (Tex. App.—Austin 1995, no writ) (analyzing decision to raise speed limit under section 101.021 and section 101.056 after concluding that sign reflecting that raised speed limit was not "condition" under section 101.060).

As previously discussed, section 101.060(a)(2) applies to claims arising from "the absence, condition, or malfunction of a traffic . . . signal." *See* Tex. Civ. Prac. & Rem. Code

§ 101.060(a)(2).  In this case, Cheney has not alleged any facts indicating that the traffic signal at the second intersection of the Rosewood Interchange was unable to convey the traffic control information intended by the City at the time of the accident.  *See Garza*, 70 S.W.3d at 807 (explaining that "condition," in the context of road signs or signals, means that the sign or signal "was either (1) unable to convey the intended traffic control information, or (2) conveyed traffic control information other than what was intended").  The City intended that the traffic signal at issue inform motorists to stop at the second intersection in Rosewood Interchange, and there is no suggestion that the signal failed or was unable to accurately convey that information.  *See Bellnoa*, 894 S.W.2d at 825 (concluding that speed-limit sign accurately reflected City's decision as to proper speed limit for road and therefore claim regarding decision to raise speed limit was not controlled by section 101.060).  Consequently, we agree with the City's contention—which Cheney does not dispute—that Cheney's claim, as alleged, does not arise from the "absence, condition, or malfunction of a traffic . . . signal."  *See* Tex. Civ. Prac. & Rem. Code § 101.060(a)(2); *Garza*, 70 S.W.3d at 807.

Based on the undisputed allegations presented in Cheney's pleadings, we conclude that Cheney's claim against the City does not fall within the limitation on waiver found in section 101.060(a)(2).[4]  Because Cheney's claim may, however, constitute a claim for which immunity has

---

[4] Although not asserted by the City, we note that Cheney's claim potentially comes within the scope of section 101.060(a)(1), to the extent her claim is based on the City's failure to initially place a warning sign at the Rosewood Interchange immediately following the reprogramming of the traffic signals.  *See id.* § 101.060(a)(1) (providing that this chapter does not apply, and thus immunity is retained, to claim arising from "(1) the failure of a governmental unit initially to place a traffic or road sign, signal, or warning device if the failure is a result of discretionary action of the governmental unit").  Because we will reverse the trial court's decision on other grounds, we do not decide this issue.  *See* Tex. R. App. P. 47.1.

11

been waived under section 101.021, we turn our focus to that provision. *See Speer*, 2018 WL 4171257, at \*6; *Bellnoa*, 894 S.W.2d at 825. Consequently, resolution of the jurisdictional issue in this case turns on (1) whether the pleaded and unnegated facts affirmatively demonstrate a premises-defect claim under section 101.021(2) of the Act, and if so, (2) whether that premises-defect claim is nevertheless excepted from waiver, and thus immunity retained, under the discretionary-function exception, section 101.056.

**Section 101.021, Premises Defect**

We will begin our jurisdictional analysis with the threshold issue of whether Cheney has sufficiently demonstrated a premises-defect claim for which immunity is waived under the Act.

To prevail on her premises-defect claim against the City, Cheney must show that the City failed to either (1) use ordinary care to warn Eric Cheney of an unreasonably dangerous condition of which it was actually aware and Eric Cheney was not, or (2) make the condition reasonably safe. *See University of Tex. at Austin v. Hayes*, 327 S.W.3d 113, 117 (Tex. 2010); *Seideneck v. Cal Bayreuther Assocs.*, 451 S.W.2d 752, 754 (Tex. 1970). A condition is an unreasonably dangerous condition if it presents an unreasonable risk of harm. *Brinson Ford, Inc. v. Alger*, 228 S.W.3d 161, 163 (Tex. 2007); *see also Knorpp v. Hale*, 981 S.W.2d 469, 474 (Tex. App.—Texarkana 1998, no pet.) ("A dangerous condition is one which presents a substantial risk of injury when the property is used with due care in a manner in which it is reasonably foreseeable that it will be used." (citing Black's Law Dictionary 394 (6th ed. 1990))). A condition poses an unreasonable risk of harm for purposes of premises liability when there is a "sufficient probability of a harmful event occurring that a reasonably prudent person would have foreseen it or some similar

12

event as likely to happen." *County of Cameron*, 80 S.W.3d at 556 (quoting *Seideneck*, 451 S.W.2d at 754). But a condition is not unreasonably dangerous simply because it is not foolproof. *Brookshire Grocery Co. v. Taylor*, 222 S.W.3d 406, 408-10 (Tex. 2006).

Cheney asserts that the City owed a duty to warn Eric Cheney of what she contends was an "unreasonably dangerous condition"—the change in the sequence of the traffic lights at the Rosewood Interchange "during peak periods of public use." Specifically, Cheney's pleadings include the following allegations:

21. Drake, Stottler, and Ayoub allegedly remained at the intersection reprogramming the signal until 11:45 a.m, then left without providing any notice to the traveling public that a brand new—and markedly different—traffic pattern had been implemented at the Intersections.

22. Approximately fifteen minutes after their departure, at 12:00 p.m., Eric Cheney ("Decedent or "Mr. Cheney"), while driving at or under the speed limit, was traveling northbound in the right-hand lane of Rosewood Drive toward Horny Toad Harley Davidson of Fort Hood in Killeen, Texas, where he was scheduled for a service appointment. This route was one Mr. Cheney had driven a number of times in the preceding 132 days.

23. Mr. Cheney received a green light at Intersection 1. When Mr. Cheney reached Intersection 2, believing he had a green light—just as he would have on every day prior thereto at this exact intersection—he began to cross. After Mr. Cheney had driven more than halfway through Intersection 2, he collided with an Infiniti SUV traveling westbound on [Central Texas Expressway] and was subsequently struck on the right rear side by another westbound vehicle.

. . .

35. In implementing the decision to reprogram the traffic signal from four-phase to three-phase operation, TxDOT and the City of Killeen were obligated to do so in a non-negligent manner.

36. By reprogramming the traffic signal on a high volume traffic day (Wednesday, the middle of the week) and during peak periods of public use (the end of the

13

morning commute through the lunch hour) without any warning or advance notice to the traveling public that a change had been implemented that would not conform to their expectations, Defendants TxDOT and the City of Killeen breached their duty.

The theory of liability presented by Cheney's pleadings, liberally construed, is that a reasonably prudent person would have foreseen that, at the time of the accident, (1) at least some motorists would have been accustomed to the four-phase operation of the traffic signals at the Interchange; (2) based on their prior experience, at least some of these motorists would then anticipate that the traffic signal at the second intersection would be green; and (3) based on that anticipation, at least some of these motorists would then fail to properly notice the red light, proceed through the intersection, and collide with another vehicle.

We conclude that Cheney's unchallenged factual allegations, taken as true, fail to demonstrate that an "unreasonably dangerous condition" existed at the time of Eric Cheney's accident. In *Texas Department of Transportation v. Garza*, the Texas Supreme Court considered whether a speed-limit sign, reflecting what the plaintiffs considered to be an excessive speed limit near a school zone, presented a "condition" under the Act. 70 S.W.3d at 807. The Supreme Court concluded that "[b]ecause the sign accurately reflected the forty-five mile-per-hour speed limit, there would have been nothing for the State to 'correct' if it had been given notice of this fact," and as result, no "condition" was presented under *either* section 101.021(2) or section 101.60(a)(2). *Id.* at 808. "At most, the Garzas have alleged that TxDOT improperly set the speed limit in the area at forty-five miles per hour." *Id.* Similarly, in this case, there is no dispute that the traffic signals at the Rosewood Interchange accurately reflected the signal under a four-phase signal operation, and

14

therefore, there was no "condition" for the City to correct. *See id.* at 808. Cheney's unchallenged pleadings, at most, suggest that the City improperly decided to change the operation of the traffic-signal sequence at the Rosewood Interchange. *See id.*

Moreover, any possible danger at the Rosewood Interchange created by the City's decision to reprogram the traffic signals would be negated by motorists' compliance with the signals. In fact, Cheney's pleadings do not suggest that the change in the traffic signal presented an unreasonably dangerous condition with respect to all licensee motorists entering the Interchange. Instead, under Cheney's theory, the danger of collision presented by the change in the signal operation at the Interchange would arise solely when certain motorists, like Cheney, failed to pay proper attention to the traffic signals and to notice a red light at the second intersection. Fundamentally, this is no different than the danger of collision typically posed by the ordinary operation of a traffic signal at any intersection and made more probable during periods of heavier traffic.

Ordinary drivers should not expect to encounter unreasonably dangerous conditions on the road. *Brumfield v. Texas Dep't of Transp.*, No. 02-13-00175-CV, 2014 WL 2462699, at *4 (Tex. App.—Fort Worth May 29, 2014, no pet.) (mem. op.). Ordinary drivers should expect, however, to encounter traffic signals and to react accordingly, regardless of how that particular traffic signal may have operated in the past. *See id.* (concluding that "two-inch mill out" in road was not unreasonably dangerous because "an ordinary driver like [claimant] should expect to encounter slight variations on the road like the one here"); *see also Knorpp*, 981 S.W.2d at 474 (concluding that "no dangerous condition existed until it was created by the licensee and, therefore, no duty to warn was shown by the evidence"). We conclude that the change in the traffic signals at the

15

Rosewood Interchange from four-phase operation to three-phase operation does not constitute an unreasonably dangerous condition under premises-defect law, such that the City had a duty to warn motorists, regardless of when or how the change was implemented.

The facts pleaded by Cheney and un-negated by the evidence, taken as true and liberally construed with an eye to the pleader's intent, affirmatively negate the existence of an unreasonably dangerous condition and, in turn, a premises-defect claim under section 101.021(2) and section 101.022 of the Texas Tort Claims Act.[5] Because Cheney failed to plead a claim within the jurisdiction of the trial court, the trial court erred in denying the City's plea to the jurisdiction.

## CONCLUSION

We reverse the trial court's order denying the City's plea to the jurisdiction and render judgment dismissing Cheney's claim against the City.

_____

Scott K. Field, Justice

Before Chief Justice Rose, Justices Pemberton and Field
  Justice Pemberton not participating

Reversed and Rendered

Filed:   November 8, 2018

---

[5] Because we conclude that Cheney has failed to demonstrate a waiver of governmental immunity under section 101.021, we do not consider the parties' arguments regarding whether Cheney's claim is excepted from waiver under section 101.056. *See* Tex. R. App. P. 47.1.